UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Criminal Case No. 06-cr-00172-WYD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HECTOR RENE GARCIA-ZAMBRANO,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on four Separate Motions: Defendant's Motion to Suppress Evidence (Arrest Warrant) [Docket #25], filed June 23, 2006; Defendant's Motion to Suppress Evidence (Search Warrant) [Docket #26], filed June 23, 2006; Defendant's Motion to Suppress Statements [Docket #27], filed June 23, 2006; and the Government's Motion for Reconsideration to Permit the Government to Reopen its Case-In-Chief [Docket # 79], filed on April 17, 2007.

For the reasons below, I find that Defendant's Motion to Suppress Evidence (Search Warrant) should be GRANTED, and the Government's Motion for Reconsideration should be DENIED. In light of my granting of Defendant's Motion to Suppress (Search Warrant), I find that the other two pending motions–Defendant's Motion to Suppress Evidence (Arrest Warrant) and Defendant's Motion to Suppress Statements–should be DENIED as MOOT.

I.  INTRODUCTION

On September 25, 2006, a hearing was conducted before this Court regarding Defendant Zambrano's pretrial Motions.  At the September 25th hearing, Detective Shawn Saunders was the sole witness.  Near the end of that hearing, it became apparent that certain officer statements were available and had not been previously produced by the Government.  Consequently, I ordered the production of Officer Fitzgibbons's report because Detective Saunders referred to statements made by Officer Fitzgibbons in his testimony.

The hearing was continued to October 25th.  At that time, Defendant Zambrano informed the Court that he intended to file a motion for a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978).  Defendant Zambrano indicated that the evidence for the proposed *Franks* hearing would be similar to the evidence that Defendant Zambrano would have presented on that date.  Accordingly, in the interest of judicial economy, I continued the October 25 hearing until I had made a decision regarding whether or not I should conduct a *Franks* Hearing.

On November 8, 2006, Defendant Zambrano filed his Motion for a *Franks* Hearing [Docket #68].  In his motion, Defendant Zambrano identified inconsistencies between Officer Fitzgibbons's underlying report and the Affidavit in Support of the Search Warrant prepared by Detective Saunders.  Defendant Zambrano argued that these inconsistencies met the threshold requirement for a *Franks* hearing because they demonstrated that false statements were made in Detective Saunder's Affidavit "knowingly and intentionally, or with reckless disregard for the truth."  Further,

Defendant Zambrano argued that these allegedly false statements were "necessary to the finding of probable cause." I agreed that Defendant had made the requisite threshold showing and granted Defendant's Motion for a *Franks* hearing by Order dated January 10, 2007.

The *Franks* hearing was conducted on March 30, 2007. The Government presented two witnesses in its case-in-chief, Detective Saunders and Officer Fitzgibbons. At the end of the *Franks* hearing, the Government requested that I allow the Government to continue the hearing and reopen its case-in-chief in order to elicit testimony from the property manager from Premier Lofts, Diane Porter. I denied the Government's request because I found that the Government was on notice as to the substance of the hearing based on the record in this case. However, I allowed both parties to file supplemental briefing regarding the legal issue of whether or not a human smelling marijuana is sufficient to support probable cause. I also raised concerns regarding the potential bias of Officer Fitzgibbons. Both parties have since filed supplemental briefs. The Government also filed a Motion for Reconsideration, asking that I reconsider my decision to deny the Government's request to reopen its case-in-chief.

II.     FACTUAL BACKGROUND

The following is a recitation of the facts according to Detective Saunders' and Officer Fitzgibbons' testimony and the exhibits received as evidence at all prior hearings. During the relevant time period, Officer Fitzgibbons was employed as a courtesy officer for the Premier Lofts located in the City and County of Denver. A

courtesy officer is allowed to live in one of the units at the Premier Lofts for reduced rent. In exchange for the rent reduction, the courtesy officer agrees to patrol the premises and handle any security problems. Specifically, Officer Fitzgibbons was paying $300.00 for an apartment that would ordinarily rent for $2400.00.

On April 7, 2006, certain employees of Premier Lofts told Officer Fitzgibbons of concerns and observations they had made regarding Defendant Zambrano. Specifically, these employees informed Officer Fitzgibbons that they would frequently smell the odor of marijuana outside of Defendant Zambrano's apartment. Officer Fitzgibbons also smelt this same odor in the hallway outside of Defendant Zambrano's apartment on four separate occasions between April 7 and April 22, 2006.

On April 24, 2006, Officer Fitzgibbons contacted Detective Saunders about the problem he had regarding the odor emanating from Defendant Zambrano's apartment. Officer Fitzgibbons told Detective Saunders that he had tried to resolve the problem with Defendant Zambrano, but was not able to do so because he had not been able to contact Defendant. Detective Saunders also testified that Officer Fitzgibbons told him "that people come and go at all hours of the day and night." (Transcript of *Franks* hearing 10:2). Officer Fitzgibbons asked Detective Saunders to assist him in dealing with the situation. After Detective Saunders spoke with Officer Fitzgibbons, he had another Officer of the Denver Police Department and K-9 Turbo go to the area directly in front of Defendant Zambrano's apartment to conduct a narcotic drug sniff. The narcotics dog did not alert to the scent of marijuana or other illegal drugs.

Detective Saunders then prepared an Affidavit, detailing the information provided to him by Officer Fitzgibbons, which was issued in support of the Search Warrant.  Detective Saunders never interviewed the employees of Premier Lofts.  Rather, he relied solely on Officer Fitzgibbons's recitation of what they had allegedly said.  Officer Fitzgibbons did not recall if he had read the Affidavit written by Detective Saunders for accuracy before it was submitted to the judge.  The Search Warrant and Affidavit were presented to a Denver County Court Judge who authorized the Search Warrant on that same day, April 24, 2006.

After the Search Warrant had been authorized, Detective Saunders went to Defendant Zambrano's apartment to execute the Warrant and discovered that Defendant Zambrano was not at home.  For that reason, a key was obtained from management, the officers knocked on the door, announced their presence, heard no response and then entered the apartment.  Inside of Defendant Zambrano's residence, Detective Saunders and other officers found substances that appeared to be controlled substances in the form of marijuana, methamphetamine, and ecstasy.

After the Search Warrant was executed, at around 5:45 p.m., Officer Fitzgibbons had five employees of Premier Lofts complete statements.  These employees were: Diane Porter, Tara Webber, Chad Forbes, Amanda Hager, and Joan Gambrell.  All five wrote that on occasions they smelled the odor of marijuana in the hallway in front of Defendant Zambrano's apartment.  The written statements were short and not very detailed.  For example, Diane Porter's statement stated simply: "On several different occasions while enacting property business in the previous 2 to 3 months and this

month I have personally smelled very strong odor of marijuana coming from under the door of Apartment #230 and as such notified Officer Fitzgibbons." (Def.'s exh. AB.)

At 8:19 p.m. on April 24, 2006, Officer Fitzgibbons also wrote out a report of what others had told him and his own observations regarding Defendant Zambrano and his apartment. In this report, Officer Fitzgibbons described how the employees of Premier Lofts had contacted him over a period of two months regarding the smell of marijuana emanating from Defendant Zambrano's apartment. Officer Fitzgibbons also explained that he had attempted to contact Defendant Zambrano about the smell, but was unsuccessful. Officer Fitzgibbons explained that he had observed, on four separate occasions, Defendant Zambrano enter the lofts with another person and go upstairs. Later, Officer Fitzgibbons observed that the person accompanying Defendant Zambrano would leave the lofts without Defendant Zambrano.

After the search was executed, Detective Saunders prepared an Arrest Warrant for the arrest of Defendant Zambrano. The Arrest Warrant was executed later that same evening, when Defendant Zambrano returned to his residence. Defendant Zambrano was taken into custody, read his rights, and interviewed.

III.  ANALYSIS

   A.   *Franks v. Delaware*

Under *Franks v. Delaware*, 438 U.S. 154, a "hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause."

*United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997). As explained above, Defendant made the necessary preliminary showing and a *Franks* hearing was held on March 30, 2007. "If the defendant establishes at the evidentiary hearing by a preponderance of the evidence that the false statement was included in the affidavit by the affiant knowingly, and intentionally, or with reckless disregard for the truth, and the false statement was necessary to the finding of probable cause, then the Supreme Court has ruled that the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* (Internal quotations omitted).

As explained in greater detail below, I find that Officer Fitzgibbons and Detective Saunders acted with reckless disregard for the truth in their preparation of the Affidavit. Further, I find that when the false statements are purged from the Affidavit, there is no longer a sufficient basis for a finding of probable cause. Finally, I find that, contrary to the Government's argument, the good faith exception does not apply to the case at hand.

### B. Whether Officer Fitzgibbons and Detective Saunders acted Knowingly, Intentionally, or with Reckless Disregard for the Truth

I find that Defendant Zambrano met his burden of demonstrating that Officer Fitzgibbons and Detective Saunders acted with reckless disregard for the truth in the preparation of the Affidavit in support of the Search Warrant. First, the officer who signed the affidavit–Detective Saunders–had no first hand knowledge of the facts and events described in the affidavit. Based on the testimony at the hearings, I find that

Detective Saunders relied solely on the verbal statements of Officer Fitzgibbons and that key parts of the oral recitation were either inaccurately reported or misunderstood.

Second, I find that Officer Fitzgibbons, who supplied all of the substantive information to the Affiant, neither read nor reviewed the contents of the Affidavit before it was submitted to the state court judge.  Although Officer Fitzgibbons testified that he could not recall whether or not he read the Affidavit before it was submitted, I find that he did not because of the numerous inaccuracies and false statements contained in the Affidavit.

Third, neither Detective Saunders nor Officer Fitzgibbons ever verified that the information in the Affidavit was accurate before it was submitted it to the county court judge.  Verifying that the Affidavit was accurate was especially important given that the Affiant was relying on the knowledge of a third party to assert that probable cause existed for the issuance of a search warrant.

Fourth, there were inconsistencies between the Affidavit and the substance of the written report completed by Officer Fitzgibbons several hours after the search warrant was executed.   This statement is inconsistent with the Affidavit submitted in support of the Search Warrant in important ways.  Officer Fitzgibbons's statement does not mention any employee of Premier Lofts ever telling Officer Fitzgibbons that there was a large amount of pedestrian traffic coming to and from Defendant's apartment.  Further, Officer Fitzgibbons's statement declares that he was contacted by employees of Premier Lofts over a period of about two months (while the Affidavit relays that it was one year).  The inconsistencies that existed between the Affidavit and the later report

prepared by Officer Fitzgibbons were not identified and considered by the two officers prior to the submission of the Affidavit.

Finally, the Affidavit recounted statements attributed to the Premier Loft employees, which statements were not verified prior to the submission of the Affidavit. This is critical because certain of the key statements were untrue. Detective Saunders did not contact any of the employees of Premier Lofts before submitting the Affidavit in support of the Search Warrant nor did he have any written statements from these employees. The day the search warrant was executed, April 24, 2006, was the first time Premier Loft employees ever prepared written statements. The written statements did not support certain vital information that was included in the Affidavit. Neither Officer Fitzgibbons nor Detective Saunders asked any of the Premier Loft employees, most importantly Diane Porter, why their written statements did not contain the same information as that which was attributed to them in the Affidavit.

For the aforementioned reasons, I find that both Officer Fitzgibbons and Detective Saunders acted with reckless disregard for the truth in the preparation of the Affidavit.

   C. <u>Which Statements in the Affidavit Must be Disregarded</u>

After carefully considering the evidence and testimony relevant to the *Franks* determination, I find that certain representations made in the Affidavit should be stricken as false. First, the statements in the Affidavit which are undisputedly false should be stricken. The statement "Officer Fitzgibbons. . . has been employed by Premier Lofts for approximately 1½ months," is false. Officer Fitzgibbons testified that

he had been employed by Premier Lofts since February of 2006, which was a longer time period than indicated in the Affidavit. (Transcript of *Franks* hearing 52:16-19.) Also, the statement "management related that this problem with apartment #230 has been an ongoing problem for nearly one year," was shown at the *Franks* hearing to be false. Officer Fitzgibbons testified that the first time he was notified of the problem was on April 7, 2006. (*Id.* at 33:12-17.) Further, Officer Fitzgibbons testified that none of the employees ever indicated to him that they had smelled marijuana prior to April 7, 2006. (*Id.* at 43:12-17.) Officer Fitzgibbons could give no explanation for this discrepancy. (*Id.* at 61:12-18.)

Also, Officer Fitzgibbons could not recall whether or not the timing indicated in the Affidavit was accurate. The Affidavit states that, "[w]ithin the last week Officer Fitzgibbons has received at least four complaints from the management about the odor and Officer Fitzgibbons has responded to apartment #230." Officer Fitzgibbons testified that he did not receive these four complaints in the one week period preceding the execution of the Affidavit. Rather, Officer Fitzgibbons testified that these four occasions occurred sometime between April 7 and April 24, although he could not recall the specific dates. (Transcript of *Franks* hearing 62:17-18). Accordingly, this statement should also be stricken.

Finally, and most importantly, the Affidavit claims that "[t]he manager of premier lofts, Diane Porter, contacted [Officer Fitzgibbons] within the last two weeks on several occasions about apartment #230 due to a large amount of pedestrian traffic coming to and from the apartment at all hours of the day." Broken down, this statement makes

three separate assertions: (1) that Diane Porter was the one that witnessed the traffic, (2) that she had contacted Officer Fitzgibbons with the last two weeks on several occasions, and (3) that the traffic occurred at all hours of the day.

There is nothing in the record before me to support Diane Porter's statement. As explained above, Detective Saunders has no personal knowledge of anyone witnessing pedestrian traffic. Detective Saunders' sole source of information was his verbal exchange with Officer Fitzgibbons. Further, the written statement from Diane Porter does not say anything about her witnessing pedestrian traffic. (Def.'s Exh. AB). Finally, Officer Fitzgibbons's own written statement does not contain anything about Diane Porter witnessing traffic coming to and from the apartment. (Def.'s Exh. B).

I also find that Officer Fitzgibbons's testimony regarding Diane Porter's observations lacked credibility. First, on the record before me it is unclear whether it was Diane Porter who witnessed the traffic coming to and from the apartment. When Officer Fitzgibbons was initially questioned on direct, he stated that it was "Tara and Joni, Amanda, Chad and James" who witnessed the pedestrian traffic, not Diane Porter. Second, Officer Fitzgibbons agreed that the time frame in which the observations occurred was not two weeks, but rather several months. Finally, the Affidavit asserts that Diane Porter witnessed the traffic at all hours of the day, yet Officer Fitzgibbons testified that the leasing agent hours were only from 8 a.m. until 6 p.m. Consequently, I find that this statement should also be stricken from the Affidavit.

> D. Whether the Affidavit, After the Above Statements are Omitted, Supports a Showing of Probable Cause

In general, "a magistrate's determination of probable cause should be paid great deference by reviewing courts." *U.S. v. Bishop*, 890 F.2d 212, 214 (10th Cir. 1989). However,"[b]ecause it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Therefore, I must determine whether or not "the remaining content of the warrant affidavit is insufficient to support a finding of probable cause." *United States v. Artez*, 389 F.3d 1106, 1116 (10th Cir. 2004). For the reasons stated below, I find that the Affidavit, purged of the false statements, does not support a showing of probable cause.

Probable cause is measured by a "totality of the circumstances" standard under which the judge makes a "practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Corral*, 970 F.2d 719, 727 (10th Cir. 1992)(quoting *Gates*, 462 U.S. at 238-39). In short, probable cause is a practical, nontechnical concept that need not be based on direct, first-hand, or hard evidence. *Corral*, 970 F.2d at 728 (quoting *United States v.*

*Thomas*, 757 F.2d 1359, 1367 (2d Cir.)), *cert. denied sub nom. Fisher v. United States*, 474 U.S. 819 (1985).

After the false statements are purged from the warrant, there are no longer any statements regarding traffic coming to and from Defendant Zambrano's apartment. Accordingly, a finding of probable cause to search the premises must be based solely on the "management" or Officer Fitzgibbons smelling the odor of marijuana in the hallway in front of Defendant Zambrano's apartment.

The evidence of management and previous tenants smelling burnt marijuana does not support a showing of probable cause.  Smelling an odor of drugs can be a basis for probable cause only if a magistrate finds the affiant qualified to know the odor. *See Johnson v. United States*, 333 U.S. 10, 13 (1948).  There is nothing in the Affidavit which indicates that any of these persons had any experience detecting the odor of marijuana.  Accordingly, there is nothing in the Affidavit which would have credited these individual's determination that the odor they smelled was actually the smell of marijuana.  To the contrary, the Affidavit does identify Officer Fitzgibbons' experience and qualifications regarding the smell of marijuana as follows:

> Officer Fitzgibbons related that he has had hundreds of investigations . . . and that during those investigations he has had the opportunity to become familiar with the odor of marijuana. . . [and] the odor he smelled coming from apartment #230 is consistent with his training and many experiences as marijuana.

Thus, I find that the county court judge could have reasonably believed that the odor Officer Fitzgibbons smelled on four separate occasions was the odor of burning marijuana.

Courts have demonstrated some reluctance in finding probable cause based solely on an officer smelling potential contraband. *See Taylor v. United States*, 286 U.S. 1, 52 (1932)("[O]fficers may rely on a distinctive odor as a physical fact indicative of possible crime; but its presence alone does not strip the owner of a building of constitutional guarantees."). The Tenth Circuit has not specifically determined whether the smell of marijuana coming from a residence would, by itself, establish probable cause for a search warrant. *United States v. Allen*, 2006 WL 3327983 (D.Utah 2006)(noting the same.) Even if the smell of marijuana alone would establish probable cause in some instances, I find that there was no probable cause in this case given the circumstances as described in the Affidavit.

First, Officer Fitzgibbons' observations only support an inference that there was potential drug use or possession at Defendant's apartment (not drug trafficking). The Tenth Circuit "has established a commonsense distinction between the smells of burnt and raw marijuana." *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998). In *U.S. v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000), the court recognized the "common-sense proposition that the smell of burnt marijuana is indicative of drug usage, rather than drug trafficking." In the instant case, the only indication of drug trafficking in the Affidavit was that traffic was coming to and from Defendant's apartment. Because that statement has been purged from the Affidavit, there is no longer any basis for an inference that Defendant Zambrano's apartment was being used for drug trafficking.

Second, the distinction between drug use/possession and possible drug trafficking is important because information only supporting an inference of drug use

-14-

would tend to go stale much sooner.  "Probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched."  *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990).  "The determination of timeliness, however, does not depend on simply the number of days that have elapsed between the facts relied on and the issuance of the warrant; instead whether the information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."  *Id.*

According to the Affidavit, the last time that Officer Fitzgibbons smelled marijuana was on April 22, 2006.  This observation was two days prior to the authorization and execution of the Search Warrant, which occurred on April 24, 2006.  "If an officer had only the evidence of the odor of burning marijuana and knew nothing more about the circumstances concerning the detection of the odor, the involved dwelling and its occupants, then the reasonableness of believing the marijuana remained in the dwelling would dissipate quickly with the passage of time."  *United States v. Harwell*, 426 F.Supp.2d 1189, 1196 (D.Kan. 2006).  Indeed, this makes sense in the instant case where there is only evidence of drug use.  Once the drugs are used or consumed, there would be no basis to assume drugs would remain on the premises.

Moreover, Officer Fitzgibbons' observation of the odor of marijuana was undermined by the later search of the narcotics dog.  Courts routinely recognize the reliability of narcotics dogs in detecting the odor of drugs.  *See e.g. United States v. Williams*, 403 F.3d 1203 (10th Cir. 2005).  On April 24, 2006, two days after Officer

-15-

Fitzgibbons had smelled marijuana, the officers in this case brought a narcotics dog to the premises. The narcotics dog did not alert to the scent of illicit drugs. The description of the narcotics dog search was also included in the Affidavit. Given the subsequent search by the narcotics dog, I find that Officer Fitzgibbons' observation of the smell of marijuana in front of Defendant's apartment no longer suggested that marijuana would be located inside of the apartment. Accordingly, the only potential basis for probable cause was stale at the time the Search Warrant was authorized and executed.

In sum, I find that the circumstances set forth in the Affidavit (after the false statements are omitted) do not support a showing that there was a fair probability that contraband or evidence of a crime would be found in Defendant Zambrano's apartment on the day that the Search Warrant was executed, April 24, 2006.

E.   Good Faith Exception to the Search Warrant

The government argues, in the alternative, that the good faith exception to the exclusionary rule applies to the execution of this Search Warrant. I disagree. The United States Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), held that the exclusionary rule should not be applied so as to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate. However, the Court in *United States v. Leon* specifically recognized that suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." 468

U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154). Consequently, there is no good faith exception to the *Franks* doctrine and a warrant based upon knowing or recklessly made falsehoods in the affidavit will be invalid.

Because I find that there was a *Franks* violation in the instant case, neither Officer Fitzgibbons nor Detective Saunders can rely on the good-faith exception created by the Supreme Court in *United States v. Leon*. Accordingly, I find that the good faith exception to the exclusionary rule does not apply to the present situation.

IV.   <u>GOVERNMENT'S MOTION TO RECONSIDER</u>

On April 17, 2007, the Government filed a Motion for Reconsideration to Permit the Government to Reopen its Case-in-Chief to Permit Testimony from Employees of Premier Lofts [Docket #79]. Specifically, the Government asks that it be permitted to elicit "testimony from Tara L. Webber and Joan Gambrell as to traffic to and from the apartment in question, and to elicit testimony from them and Ms. Diana Porter, the Property Manager at the premises, regarding the issue of the detection of the odor of burning marijuana emanating from the apartment in question." As grounds for its request, the government argues that "several unexpected developments during and at the conclusion of [the] hearing prompt the Government to respectfully renew its request for limited testimony from Ms. Porter and two other employees, Tara L. Webber and Joan Gambrell."

The first development that the Government argues was unexpected is that "the Court seemed to discredit or discount the sworn testimony of Officer Robert Fitzgibbons, Denver Police Department (DPD), due to his off-duty employment as a

courtesy officer at the Premier Lofts." Perhaps this was unexpected, but Officer Fitzgibbons was a witness at the hearing on March 30, 2007, and the Government had the opportunity to develop the record regarding Officer Fitzgibbons' employment with Premier Lofts at that time. Testimony from Ms. Porter and two other employees of Premier Lofts would not be helpful in my determination of the credibility and reliability of Officer Fitzgibbons.

The Government also argues that it did not anticipate "the Court's opinion that Officer Fitzgibbons, and not Detective Shawn Saunders, assigned to DPD's Vice and Narcotics Control Bureau, should have been the affiant in support of the search warrant." Similar to the issue above, the Government was able to develop testimony at the hearing as to the Denver Police Department procedure regarding which officer would ordinarily be the affiant in support for a search warrant. Moreover, while the Government argues that this issue was not anticipated, testimony from Ms. Porter and two other employees of Premier Lofts would not in any way be helpful in developing the record on Denver Police Department's policies.

The Government also urges this Court to allow two employees of Premier Lofts, Tara L. Webber and Joan Gambrell, to testify about witnessing traffic coming to and from the apartment. Whether other individuals may have witnessed traffic coming in and out of Defendant's apartment is not at issue in this case. The Affidavit specifically stated that Diane Porter, the property manager, is the individual who witnessed large amounts of traffic coming to and from the apartment at all hours. Consequently, I find

that testimony from Tara L. Webber and Joan Gambrell would not be helpful in my determination of this matter.

Finally, the Government asserts that it did not anticipate the issue of whether or not a human smelling marijuana is enough to support probable cause. Contrary to the Government's argument, the March 30, 2007, hearing was not the first time this issue was raised. On page seven (7) of Defendant's Motion for a *Frank's* Hearing [Docket # 68], the Defendant raises this exact issue. Also, in the same Motion, the Defendant cites to the very case that this Court brought up in the March 30, 2007, hearing–*United States v. Nelson*, 9 F.3d 1487 (10th Cir. 1993). Accordingly, I find that this was not an unexpected issue as the Government asserts. Further, I allowed both Defendant and the Government to file supplemental briefs on this issue.

Accordingly, I find that the Government does not provide any basis for me to allow the Government to reopen its case-in-chief.

III.   CONCLUSION

For the aforementioned reasons, it is

ORDERED that Defendant's Motion to Suppress (Search Warrant) [Docket # 26] is **GRANTED**. In accordance therewith, it is

ORDERED that all evidence obtained as a result of the Search executed on Defendant Zambrano's residence on April 24, 2006, is **SUPPRESSED**. It is

FURTHER ORDERED that the Government's Motion to Reconsider [Docket #79] is **DENIED**. It is

FURTHER ORDERED that Defendant's Motion to Suppress (Arrest Warrant) [Docket #25] and Defendant's Motion to Suppress Statements [Docket #27] are **DENIED AS MOOT**.

Dated: May 23, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge